**Nos. 26-1922, 26-1923**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

STATE OF WASHINGTON, *et al.*,
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,
Defendants-Appellants.

---

NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Rhode Island

---

**REPLY IN SUPPORT OF EMERGENCY MOTION**
**FOR STAY PENDING APPEAL**

---

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL RAAB
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS

INTRODUCTION....................................................................................................... 1

ARGUMENT............................................................................................................. 1

I. The government is likely to prevail on its appeal.................................................. 1

II. The equitable factors favor a stay pending appeal................................................ 7

CONCLUSION ........................................................................................................ 10

CERTIFICATE OF COMPLIANCE

# INTRODUCTION

HUD has determined that previous housing policies have failed to ameliorate a worsening homelessness crisis. HUD seeks to address that failure with a new policy approach. Specifically, HUD has determined that the Continuum of Care program would be more effective in achieving its statutory goals of reducing homelessness and improving self-sufficiency if it increased its focus on transitional housing and "supportive services only" projects. The set-aside at issue in this appeal is designed to advance those goals. The district court erred in concluding that HUD was required to go through notice and comment before issuing the 2026 notice of funding opportunity, and the equities tip heavily in the federal government's favor. Plaintiffs fail to rebut HUD's reading of the statute in question, while assuming their own success on the merits and downplaying the harms to HUD. A stay is warranted.

# ARGUMENT

## I. The government is likely to prevail on its appeal.

The district court erred in concluding that HUD was required to go through notice and comment before setting aside funds prioritizing transitional housing and "supportive services only" projects. As a result, HUD is likely to prevail on its appeal.

*First,* the set-aside is not a bonus or other incentive within the meaning of the statute. Instead, it is one of multiple selection criteria established by the Secretary pursuant his statutory authority to adopt selection criteria that, in his judgment, are "appropriate to carry out" the Continuum of Care program "in an effective and efficient

manner." 42 U.S.C. § 11386a(b)(1)(G). This program is a competition that, by its nature, requires the evaluation of applicants, and HUD uses these criteria to select grantees and projects to receive standard funding. Once a grantee is selected, it may then be eligible for bonuses or other incentives, depending on its performance. *See* 42 U.S.C. § 11386b(e) (stating that grantees can receive bonuses or incentives for "fully implementing any of the activities described in subsection (d) for all homeless individuals and families"). Reading the set-aside as an incentive would erase this distinction. Section 11386b(e) also states that grantees may use bonuses or other incentives "for any eligible [Continuum of Care] activity." The set-aside, by contrast, is reserved for specific Continuum of Care activities and thus does not function as a bonus or other incentive under the statute.

It is no answer that the set-aside encourages grantees to conform their program to HUD's policy judgments and therefore acts as an incentive in a colloquial sense. *See* NAEH Opp. 12-13; State Opp. 14. The same would be true of any other selection criteria or requirement, which undisputedly do not need to go through notice and comment. Plaintiffs' suggestion—that the Secretary is forbidden from imposing criteria that have the tendency to incentivize anything other than permanent supportive housing and rapid rehousing (State Opp. 14-15)—would effectively eliminate the Secretary's statutory discretion to establish selection criteria. 42 U.S.C. § 11386a(b)(1)(G). And it would permanently deprioritize other recognized Continuum of Care activities. *See* 42 U.S.C. § 11386b(c) (declining to limit the funding an applicant

may request "for acquisition, construction, or rehabilitation activities for the development of permanent housing or transitional housing"); 24 C.F.R. § 578.37(a) (noting that Continuum of Care funds may be used to pay for any of five program components: "permanent housing; transitional housing; supportive services only; [Homeless Management Information System]; and, in some cases, homelessness prevention").

Plaintiffs' other counterarguments are similarly insubstantial. Understanding bonuses and other incentives to be distinct from standard funding does not render the term "other incentives" superfluous (NAEH Opp. 12)—the language "bonuses or other incentives" simply acknowledges that the incentive in question might not be characterized as a bonus. It says nothing about standard award funds. And the use of the phrase "funding under this part" (i.e., the pool of Continuum of Care funding) in the statutory authorization for the Secretary to "provide bonuses or other incentives . . . for using funding under this part for activities that have been proven to be effective at reducing homelessness," 42 U.S.C. § 11386b(d)(1), does not suggest that there is no distinction between standard funding and performance-based bonuses and incentives. The statute simply says that, if grantees use their standard CoC funds on certain activities, they may be eligible for bonuses or other incentives depending on the degree to which they are able to implement those activities. 42 U.S.C. § 11386b(d), (e).

*Second,* even if the set-aside were a bonus or other incentive, notice and comment would not be required, because the notice-and-comment requirement only applies to

activities that the Secretary *must* incentivize. The provision thus does not say that the Secretary may only provide bonuses or other incentives for the listed activities. Instead, it states that HUD must provide bonuses or other incentives for the activities covered by that subsection. The Secretary retains his separate statutory discretion to establish other selection criteria—criteria that may influence applicants to propose certain activities. 42 U.S.C. § 11386a(b)(1)(G). Plaintiffs' arguments are unavailing. The statute does not say, as plaintiffs posit, that "if the Secretary wishes to incentivize 'any other activity,'" HUD must determine through notice and comment that the activity is proven effective. State Opp. 15; *see* NAEH Opp. 14. It states that, if an activity is determined through notice and comment to be proven effective, HUD is required to incentivize it every year. *See* 42 U.S.C. § 11386b(d). HUD's reading thus does not "erase" (NAEH Opp. 14) any aspect of the provision. Nor do plaintiffs successfully grapple with the fact that HUD's practice since the statute was first enacted in 2009 has been to use notices of funding opportunity to set Continuum of Care funding priorities, without going through notice and comment to identify strategies worth funding. Indeed, the notice of funding opportunity itself provides notice of HUD's funding priorities, of which the set-aside is one manifestation.

The states assert in passing that HUD regulation also required it to engage in notice and comment here. *See* State Opp. 13. Not only is this argument not adequately presented, it is also meritless. The regulation in question provides that "[i]t is the policy of [HUD] to provide for public participation in rulemaking with respect to all HUD

programs and functions, including matters that relate to public property, loans, grants, benefits, or contracts even though such matters would not otherwise be subject to rulemaking by law or Executive policy." 24 C.F.R. § 10.1; *see also id.* (exempting, *inter alia*, statements of policy and interpretative rules from this requirement). In other words, HUD's policy is that, when it does engage in rulemaking, it uses notice and comment. Section 10.1 thus does not expand when HUD will undertake rulemaking. It merely clarifies that, when HUD does undertake rulemaking, it will offer public participation. Contrary to the states' suggestion, State Opp. 13, it does not follow from the regulation that every matter related to grants must go through rulemaking or notice and comment—HUD has no such obligation, nor has that ever been HUD's practice.

*Third,* even if the district court were correct that the set-aside was a bonus or other incentive and that some form of notice and comment was required, it still erred in concluding that HUD did not satisfy that requirement. The statute does not mention or require APA-style notice and comment. *Contrast* 42 U.S.C. § 11386b(d)(2)(C), *with* 42 U.S.C. § 1437d(j)(2)(A)(i) (requiring HUD, in administering its housing-voucher programs, to "under the rulemaking procedures under Section 553 of title 5, establish procedures for designating troubled public housing agencies"), and 2 U.S.C. § 5403(a)(4)(B)(i) (requiring the Secretary to "cause [the] proposed revised standard [for manufactured homes] to be published in the Federal Register for notice and comment in accordance with section 553 of title 5"). Plaintiffs do not seriously argue otherwise. *See* NAEH Opp. 16; State Opp. 16.

HUD determined that the activities supported by the set-aside were proven effective at reducing homelessness based on research and notice and comment to the public, under the plain meaning of those terms. HUD reviewed articles and peer-reviewed research; it provided notice to the public through public statements and stakeholder forums; it solicited and received public comments through these forums and through separate discussions with Continuum of Care recipients and other homelessness-service providers; and it digested those comments to be reflected in the NOFO. Plaintiffs may have preferred more specific public statements and different kinds of forums (State Opp. 16; NAEH Opp. 16), but HUD was not required to do more than it did. *See Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) ("Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them.").[1] Nor was HUD required to receive public feedback on the set-aside itself (State Opp. 16-17). Where HUD is required to use "research and notice and comment to the public," it is to determine if an activity has been "proven effective at reducing homelessness," 42 U.S.C. § 11386b(d)(2)(C), not to set the terms of the funding competition.

[1] Indeed, plaintiffs have previously argued that the appropriate place for HUD to introduce new funding priorities and policy choices would be the 2026 NOFO. *See* ECF 32, at 44 & n.13, HUD Motion for Summary Judgment, *NAEH v. HUD*, 1:26-cv-436 (D.R.I.) (collecting plaintiffs' statements to that effect from the litigation over the 2025 NOFO).

Finally, NAEH suggests that the Court could conclude that HUD is unlikely to succeed on its appeal of the notice-and-comment issue based on one or more of plaintiffs' other challenges. *See* NAEH 17-18. The district court did not reach those challenges, however, and plaintiffs' cursory mention of them here provides no basis to deny a stay. HUD is likely to defeat those challenges for the reasons discussed in its summary-judgment brief below: the 2026 NOFO does not exceed HUD's statutory authority, nor is it arbitrary and capricious. *See* ECF 32, at 28-70, *NAEH v. HUD*, No. 1:26-cv-436 (D.R.I.). Ultimately, NAEH's attempt to offer up alternative theories only underscores the weakness of their arguments on the notice-and-comment issue.

## II. The equitable factors favor a stay pending appeal.

The harm to HUD and the public outweighs any harm to plaintiffs from a stay.

A stay will not substantially harm plaintiffs. As previously explained, the immediate effect of a stay would merely be to allow HUD to invite applications under the new NOFO and begin to consider them. If HUD prevails on appeal, all parties will be better off because applicants would have had an opportunity to review the NOFO and prepare applications, applications will have been processed, and grants will be ready to be made. And if HUD does not prevail on appeal, plaintiffs will have the opportunity to apply for funds under a new NOFO.

Plaintiffs assert that even applying for funding under the 2026 NOFO would harm them, because it would require Continuums of Care "to announce the results of their local competitions," which would in turn risk negative reactions from local

providers that plaintiffs choose not to prioritize. NAEH Opp. 20; *see* State Opp. 18-19. But this is no different than what might occur under any NOFO and is no basis to deny a stay here. The same is true for the risk that providers may make strategic or budgetary decisions based on Continuum of Care's prioritizations during the application process. *See* NAEH Opp. 21; State Opp. 18. And there is no guarantee that plaintiffs' projects would be selected under a different NOFO.

Meanwhile, HUD will be irreparably injured absent a stay. Congress has directed HUD to make awards by December 1, 2026. *See* 2026 Appropriations Act, 140 Stat. 173, 400. HUD's ability to meet that deadline is already gravely imperiled, given the time needed for applicants to complete their local competitions and for HUD to complete its multi-layered review. Without a stay, even if HUD were to prevail on appeal, it would be long past December 1 by the time HUD resumed the competition and made awards. App. 14. And this would cause funding gaps when existing grants begin to expire on January 1, 2027. App. 14. These funding gaps will grow as time passes. As a result, every day that relief is denied amplifies the harm to HUD (and to grantees, homeless individuals, and the public) by extending the potential funding gap. Plaintiffs' response—that a stay would only delay the inevitable need for a new NOFO and a new application process (NAEH Opp. 22-23)—assumes the merits. So too does plaintiffs' argument that HUD cannot suffer harm from the NOFO's vacatur because the NOFO is unlawful (State Opp. 17, NAEH Opp. 22). For the reasons discussed

above, HUD is likely to succeed in showing that it was not required to use notice-and-comment to institute the set-aside.

Nor do plaintiffs have any response to the argument that the decision irreparably harms HUD by preventing it from implementing its congressional mandate to set housing policies and priorities. Any time the government is prevented "from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quotation marks omitted); *see also District 4 Lodge of the Int'l Assoc. of Machinists & Aerospace Workers Local Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021). Congress has directed HUD to issue a NOFO and award Continuum of Care funds. Thwarting HUD's exercise of its congressionally imposed duty irreparably injures HUD and the public interest. HUD seeks to implement the policy approach that it deems best suited to addressing an ongoing homelessness crisis that has seen years of increasingly negative outcomes despite previous Continuum of Care efforts. Restoring HUD's flexibility to implement its policy priorities to address this crisis is thus in the public interest.

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

MICHAEL RAAB

*s/ Sarah Clark Griffin*
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*
*sarah.c.griffin@usdoj.gov*

AUGUST 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,327 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin