**No. 26-1923**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

National Alliance to End Homelessness *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Housing and Urban Development *et al.*,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the District of Rhode Island
Case No. 26-cv-436, Hon. Mary S. McElroy

## Plaintiffs-Appellees' Supplemental Brief in Response to the Court's August 27, 2026, Order


Amy R. Romero
Kevin Love Hubbard
Juan E. Bedoya
Lawyers' Committee for Rhode Island
56 Pine Street, Suite 200
Providence, RI 02903
(401) 238-3953
amy@lawyerscommitteeri.org

Kristin Bateman
Madeline H. Gitomer
Christine L. Coogle
Carrie Y. Flaxman
Robin Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org

*(additional counsel on signature page)*

It is axiomatic that an agency "literally has no power to act ... unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Here, no statutory provision grants HUD authority to adopt the FY 2026 NOFO's set-aside. In general, HUD's authority to establish set-asides stems from 42 U.S.C. § 11386b(d). That provision empowers HUD to provide "bonuses and other incentives" to fund "proven strategies," and HUD regulations make clear that a set-aside of funds is a "bonus" within this provision's scope. *See* 42 U.S.C. § 11386b(d); 24 C.F.R. § 578.17(a)(2)(ii). This provision has an important limit: a set-aside can go only to an activity that has "been proven effective" at achieving specified goals. Thus, HUD can establish a set-aside only if it is for one of the two "proven" activities that Congress identified or if HUD determines, "based on research and after notice and comment to the public," that the activity has been proven effective. 42 U.S.C. § 11386b(d)(2). HUD did not do this in establishing the FY 2026 NOFO's set-aside for new transitional housing and supportive-services-only projects—and the district court correctly vacated the NOFO for that reason.

On August 27, this Court directed the parties to address two questions pertaining to these issues. Plaintiffs respectfully submit this supplemental brief in response to that order.

## I. Question 1: Does 42 U.S.C. § 11382(a) provide the Secretary with discretion to make a set-aside of Continuum of Care funds so long as there are sufficient funds to comply with the congressionally mandated set-asides under 42 U.S.C. § 11386b(a) & (b)?

No. Section 11382(a) does not provide HUD with discretion to make a set-aside of Continuum of Care (CoC) funds, regardless of whether there are sufficient funds to comply with the congressionally mandated set-asides under 42 U.S.C. § 11386b(a) and (b). First, the mandates to make certain set-asides under subsections 11386b(a) and (b) operate independently from—and do not excuse HUD from complying with—the requirement in subsection 11386b(d) that HUD provide set-asides only for proven activities. Second, neither section 11382(a) nor section 11386a(b)(1)(G)—which authorize HUD to adopt certain "selection criteria"—separately grants HUD authority to establish set-asides without complying with subsection 11386b(d)'s strictures. And, third, even if those provisions could authorize set-asides in some circumstances, they do not authorize the particular set-aside that HUD adopted in the FY 2026 NOFO. Sections 11382(a) and 11386a(b)(1)(G) empower HUD to establish selection criteria only if they help carry out the program "in an effective and efficient manner," and, far from satisfying that standard, the FY 2026 NOFO's set-aside directly *undermines* the approaches that Congress itself determined were effective.

*a.* To begin, there is no dispute that HUD must comply with the congressionally mandated set-asides under subsections 11386b(a) and (b)—which

require specified portions of funding to go to permanent supportive housing for individuals and families with disabilities and to families with children—as well as any other set-asides that Congress mandates. *See, e.g.*, Consolidated Appropriations Act, 2026, Pub. L. No. 119-75, 140 Stat. 173, 399 (requiring HUD to set aside a specified amount of FY 2026 CoC funds to help domestic violence survivors). But complying with these mandatory set-asides does not excuse HUD from complying with the separate constraints that subsection 11386b(d) places on HUD's authority to establish bonuses and other incentives, such as a set-aside. Those statutory requirements operate independently.

The mandates in subsections 11386b(a) and (b) reflect Congress's decision to give certain populations special attention. *See* S. Rep. No. 110-216, at 4 (2007) (explaining that these provisions would "continue [Congress's] longstanding support" for directing certain funding toward "permanent housing for people with disabilities" and "encourag[e] preventing and ending homelessness for families with children"); *see also* H.R. Rep. No. 110-906, at 34 (2008) (similar). Meanwhile, subsection 11386b(d) governs incentives for proven activities. Satisfying the set-aside requirements in subsections 11386b(a) and (b) does not leave HUD free to create any other set-asides it wants. Rather, as Plaintiffs previously explained, subsection 11386b(d) constrains HUD's ability to establish set-asides—and HUD exceeded those constraints by establishing a set-aside for

activities that had not been proven effective "based on research and after notice and comment to the public," 42 U.S.C. § 11386b(d)(2)(C). Pls.-Appellees' Opp'n to Emergency Mot. for Stay at 11–17 (Aug. 21, 2026).

*b.* In an attempt to find authority elsewhere, HUD points to two provisions that have nothing to do with setting aside funding: 42 U.S.C. §§ 11382(a) and 11386a(b). *See* Defs.-Appellants' Suppl. Letter Br. at 3 (Aug. 31, 2026) ("Defs.' Suppl. Br."). Section 11382(a) directs HUD to competitively award grants "using the selection criteria described in section 11386a." Section 11386a, in turn, requires HUD to award funds based on a lengthy list of statutorily enumerated "criteria" and authorizes HUD to adopt additional criteria that it "determines to be appropriate to carry out this part in an effective and efficient manner." *See* 42 U.S.C. § 11386a(a), (b). According to HUD, these provisions authorize it to establish set-asides. Not so. A set-aside is not a "criteri[on]"; it is the creation of a separate pot of money, for which only certain projects are eligible. Although HUD might adopt criteria for how to qualify for a set-aside, a set-aside is not itself a "criteri[on]," and neither section 11382 nor section 11386a(b) authorizes HUD to create one.

Indeed, reading those provisions to authorize HUD to create set-asides would nullify subsection 11386b(d)'s limitations on creating bonuses and other incentives. As explained below, a set-aside is straightforwardly a "bonus" under

subsection 11386b(d). *See infra* section II. If HUD could freely create set-asides under its authority to establish “selection criteria” under sections 11382 and 11386a(b), subsection 11386b(d)’s limitations on providing set-asides only to “proven” activities would be dead letter—contrary to the “cardinal principle” that no part of a statute should be construed to “be superfluous, void, or insignificant.” *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up).

*c.* Even if a set-aside could in some instances be considered a “[s]election criteri[on]” authorized under subsection 11386a(b)(1)(G), that provision does not authorize the particular set-aside that the FY 2026 NOFO adopts. Subsection 11386a(b)(1)(G) authorizes only those criteria that HUD deems appropriate to carry out the program “in an effective and efficient manner,” 42 U.S.C. § 11386a(b)(1)(G), and other provisions of the statute make clear that the set-aside does not meet that standard.

To start, the set-aside favors transitional housing and supportive-services-only projects over permanent housing projects, Suppl.App.180–81, 234—but HUD cannot claim that this approach serves effectiveness and efficiency goals, as that flies in the face of the statute. Congress determined that specified permanent supportive housing and rapid rehousing activities had been proven effective in addressing homelessness and directed HUD to provide incentives for those activities. 42 U.S.C. § 11386b(d)(1), (2)(A)–(B). Yet the set-aside would

*dis*incentivize those very activities. Whatever discretion HUD might have to determine what will make the CoC program effective, it cannot override Congress's own judgment on that score.

Similarly, the set-aside flouts Congress's priorities by limiting funds to new projects only. Suppl.App.180–81. Categorically making existing projects ineligible for funding, no matter how successful they are, does nothing to serve effectiveness or efficiency. Indeed, Congress took pains to protect renewals of existing permanent housing projects. *See, e.g.*, 42 U.S.C. § 11386c(b) (mandating that appropriated funds "shall be available for the renewal of [permanent housing] contracts" for terms of specified durations"); *id.* (requiring HUD to "determine whether to renew" existing permanent housing projects "on the basis of" the CoC's certification as to two (and only two) things, neither of which is whether HUD has chosen to make funds available for the renewal). But the set-aside would countermand those protections by disqualifying existing permanent housing projects from eligibility for nearly a third of available funding, thereby guaranteeing that many will not be renewed. HUD cannot claim that it makes the CoC program more "effective and efficient," 42 U.S.C. § 11386a(b)(1)(G), to defund existing projects whose funding Congress sought to protect.

For all these reasons, subsection 11382(a) does not authorize HUD to make any set-aside of CoC funds—much less the set-aside that it actually adopted in the

FY 2026 NOFO—regardless of whether HUD also complies with the mandatory set-asides established by subsections 11386b(a) and (b).

## II. Question 2: What is meant by "bonuses or other incentives" as that term is used in 42 U.S.C. § 11386b(d)(1)? Further, identify any regulations, policies, guidances, or other documents explaining how such "bonuses or other incentives" are provided.

Subsection 11386b(d)(1) directs HUD to provide "bonuses or other incentives" for proven strategies. The FY 2026 NOFO's set-aside is a "bonus" and "incentive" subject to this provision's requirements. As an initial matter, the statute itself, as well as the legislative history and prior HUD practice, show that these bonuses and incentives are meant to fund the covered proven activities—not, as HUD would now have it, only to reward communities that have already fully implemented those activities. Second, while HUD regulations and other documents do not comprehensively address what kinds of things constitute a "bonus[] or other incentive[]" within the meaning of subsection 11386b(d)(1), there is no real dispute that those terms encompass a set-aside of money to fund particular strategies. And HUD regulations make clear that a set-aside is a "bonus," and a set-aside also undeniably provides an "incentive" to seek funding for the activities that the set-aside covers. Finally, HUD is wrong to suggest that this understanding of "bonuses and other incentives" nullifies HUD's separate authority to establish certain selection criteria—the provision providing that authority continues to have meaningful effect. The FY 2026 NOFO's set-aside is a "bonus[] or other

incentive[]" within the meaning of subsection 11386b(d), and the district court properly concluded that HUD violated that provision by providing a massive set-aside for unproven activities.

*a.* Subsection 11386b(d) governs bonuses and incentives to fund proven activities, not just (as HUD now claims in this litigation) to award additional funds to any grantee that "fully implements" a proven-effective activity. *Contra* Defs.' Suppl. Br. at 4. The statutory text, legislative history, and past HUD practice are all united in making that clear.

Beginning with the statutory text, subsection 11386b(d) provides for bonuses and incentives separate and apart from subsection (e). Subsection (d) mandates that HUD "shall provide bonuses or other incentives … *for using* funding under [the CoC program] for activities that have been proven to be effective." 42 U.S.C. § 11386b(d)(1) (emphasis added). In other words, HUD must provide an incentive for "using [CoC] funding" on the proven activities themselves. *Id*. Separately, under subsection (e), if a geographic area "fully implement[s]" a proven activity—*e.g.*, by meeting all of the area's need for a particular proven activity—it is not penalized for that success. *See id.* § 11386b(e). Rather, that geographic area can still receive the bonus or incentive, "but may use [it] for any eligible activity"—and is not limited to using it for the (already fully implemented) proven activity. *Id.*

The legislative history confirms this understanding of the statutory text. As the House report on the bill that became the HEARTH Act explains, subsection (e) ensures that if a community fully implements any proven strategy, "they *could still* receive a bonus." H.R. Rep. No. 110-906, at 52 (emphasis added). In other words, communities can receive bonuses even if they have not fully implemented proven strategies—and "still" can if they do achieve full implementation. Meanwhile, subsection (d) is meant to "provide incentives to fund interventions that are proven to be effective"—not merely to reward communities that have fully implemented those proven interventions. *Id.*; *see also* S. Rep. No. 110-216, at 9.

HUD's past practice further confirms this understanding. For example, in its 2014 NOFO, HUD "set aside approximately $40 million for a Permanent Supportive Housing Bonus (PSH Bonus) to create new dedicated permanent supportive housing to serve the chronically homeless"—an activity that Congress designated as having proven effective in subsection 11386b(d)(2)(A). HUD, *Notice of Funding Availability (NOFA) for the Fiscal Year (FY) 2014 Funds in the FY 2013–FY 2014 Continuum of Care Program Competition*, FR-5800-N-30, at 2, https://perma.cc/9EPG-FCXS. That NOFO specifically stated that HUD created this bonus "in accordance with Section 428(d)" of the HEARTH Act, *i.e.*, in accordance with subsection 11386b(d). *Id.* at 13. This bonus was available to fund permanent supportive housing projects for the chronically homeless, not to provide

additional funds to communities that had already fully implemented that strategy. *See id.*

*b.* There can be no real dispute that a set-aside of money to fund particular strategies qualifies as a "bonus" or "incentive." As the reference to "bonuses *or other* incentives" signifies, a "bonus" is one type of "incentive." *See* 42 U.S.C. § 11386b(d)(1) (emphasis added). And HUD regulations demonstrate that an "amount" that is "set aside" for particular activities is a "bonus." 24 C.F.R. § 578.17(a)(2)(ii). In particular, these regulations, in place since 2012, establish a framework for determining each geographic area's annual need, and one step in that framework takes the total funds available for the program for that year and deducts out "the amount" that the NOFO "set[s] aside to provide a bonus to geographic areas for activities that have proven to be effective [in meeting the goals identified in subsection 11386b(d)] and to meet policy priorities set in the NOF[O]."[1] *Id.* This shows that HUD has long considered an amount that HUD sets aside for a particular activity to constitute a "bonus" within the meaning of section

[1] The regulation's reference to "policy priorities" does not imply that HUD has unfettered discretion to advance its priorities by creating any set-asides it wishes. *See* 24 C.F.R. § 578.17(a)(2)(ii). Rather, the regulation contemplates that a single set-aside both provides a bonus for proven activities "and" promotes policy priorities—not one "or" the other. For instance, HUD's policy priorities can shape how large HUD makes the set-aside for proven activities and which particular proven activities it covers.

11386b(d).[2] The FY 2026 NOFO's set-aside is thus a "bonus" subject to that provision.

A set-aside also straightforwardly qualifies as an "incentive" within the ordinary meaning of that term. No HUD regulations or other documents address what qualifies as an "incentive," and, under standard principles of interpretation, that term must be read in accordance with its "plain and ordinary meaning at the time of the statute's enactment." *United States v. Abreu*, 106 F.4th 1, 12 (1st Cir. 2024). The ordinary meaning of "incentive" at the time of the HEARTH Act's enactment in 2009 was just as we understand the word today: "something that incites or has a tendency to incite to determination or action." *Incentive*, Merriam-Webster's Collegiate Dictionary 628–29 (11th ed. 2006). Thus, in the context of the CoC program, an "incentive" could be a bonus—an amount set aside for particular activities, like the FY 2026 NOFO's set-aside—or anything else that tends to encourage applicants to take particular action. Certainly, directing almost one-third of available funding to specific activities incites action—leading CoCs to seek funding for projects that qualify for that funding.

[2] Over the years, HUD NOFOs have also used the word "bonus" to describe a different concept: additional amounts that each individual CoC is eligible to apply for—*i.e.*, an increase to their maximum possible award amount—even where there is no corresponding separate pot of money. *See, e.g.*, Suppl.App.156–57 (FY 2026 NOFO); HUD, *FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants*, No. FR-680-N-25, at 14, https://perma.cc/5RYW-H52E. This separate type of bonus is not at issue here.

*c.* HUD misses the mark in contending that understanding a set-aside like this to be a bonus or incentive subject to subsection 11386b(d) would nullify HUD's authority under subsection 11386a(b)(1)(G) to adopt selection criteria. *Contra* Defs.-Appellants' Emergency Mot. for Stay Pending Appeal at 5 (Aug. 14, 2026). HUD continues to have authority to adopt selection criteria—and those criteria can, and often will, create incentives. (For instance, selection criteria that award points to CoCs that coordinate with other community partners in addressing homelessness incentivize CoCs to engage in such coordination.)

But what HUD gets wrong is that subsection 11386a(b)(1)(G) does not authorize HUD to adopt any incentives it sees fit; it gives HUD authority only to adopt actual "criteria" (which a set-aside is not), and only where those criteria make the program "effective and efficient." *See supra* section I.b–c. Where HUD meets these requirements, it can incentivize certain behaviors through its selection criteria. But if a bonus or incentive does not constitute a selection "criteria[on]" authorized under subsection 11386a(b)(1)(G), HUD can offer it only if another statutory provision provides the needed authority—for instance, if the set-aside is for a properly designated "proven" activity under subsection 11386b(d). Plaintiffs' reading gives meaningful effect to both subsection 11386b(d)'s rules for bonuses and incentives and subsection 11386a(b)(1)(G)'s grant of authority to adopt certain criteria. And because neither of those provisions (nor any other provision)

authorizes the FY 2026 NOFO's set-aside, the district court correctly held it invalid.

*      *      *

The FY 2026 NOFO's set-aside is a "bonus" that HUD improperly created for activities that had not been "proven effective" under subsection 11386b(d). The district court properly vacated the NOFO on that ground, and this Court should accordingly deny HUD's motion for a stay pending appeal.

September 2, 2026

Respectfully submitted,

/s/ *Kristin Bateman*
Kristin Bateman
Madeline H. Gitomer
Christine L. Coogle
Carrie Y. Flaxman
Robin Thurston
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
kbateman@democracyforward.org
mgitomer@democracyforward.org
ccoogle@democracyforward.org
cflaxman@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs National Alliance to End Homelessness, National Low Income Housing Coalition, Crossroads RI, and Youth Pride, Inc.*

Amy R. Romero
Kevin Love Hubbard
Juan E. Bedoya
Lawyers' Committee for Rhode Island
56 Pine Street, Suite 200
Providence, RI 02903
(401) 238-3953
amy@lawyerscommitteeri.org
kevin@lawyerscommitteeri.org
juan@lawyerscommitteeri.org

*Counsel for All Plaintiffs*

Tony LoPresti
County Counsel
Kavita Narayan
Chief Assistant County Counsel
Meredith A. Johnson
Lead Deputy County Counsel
Stefanie Wilson
Deputy County Counsel

Leily Arzy
Litigation Fellow
70 West Hedding Street, East Wing
Ninth Floor
San José, CA 95110-1770
(408) 299-5900
meredith.johnson@cco.sccgov.org
stefanie.wilson@cco.sccgov.org
leily.arzy@cco.sccgov.org

*Counsel for Plaintiff County of Santa Clara*

John K. Whitaker
Senior Counsel
109 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219
(615) 862-6341
john.whitaker@nashville.gov

*Counsel for Plaintiff Metropolitan Government of Nashville and Davidson County*

Christopher M. Sanders
General Counsel to the King County Executive
Cristy J. Craig
Senior Deputy Prosecuting Attorney
Mika Rothman
Deputy General Counsel
Office of the King County Prosecuting Attorney
401 5th Avenue, Suite 600
Seattle, WA 98104
(206) 477-1163
chrsanders@kingcounty.gov
cristy.craig@kingcounty.gov
mrothman@kingcounty.gov

Lynette Labinger
128 Dorrance Street, Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
Cooperating counsel, ACLU Foundation of RI

*Counsel for Plaintiffs National Alliance to End Homelessness, National Low Income Housing Coalition, Crossroads RI, and Youth Pride, Inc.*

Antonia K. Fasanelli
National Homelessness Law Center
1400 16th Street, NW, Suite 425
Washington, DC 20036
(202) 638-2535
afasanelli@homelesslaw.org

*Counsel for Plaintiffs National Alliance to End Homelessness and National Low Income Housing Coalition*

Toby Merrill*
Cassandra Crawford**
Graham Provost***
Kayla Svihovec***
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
toby@publicrightsproject.org
cassandra@publicrightsproject.org
graham@publicrightsproject.org
kayla.svihovec@publicrightsproject.org

*Counsel for Plaintiffs City of Boston, City of Cambridge, Martin Luther King, Jr. County, Metropolitan*

*Counsel for Plaintiff Martin Luther King, Jr. County*

*Government of Nashville and Davidson County, City of Tucson*

* Admitted in Massachusetts. Not admitted in California.

** Admitted in North Carolina. Not admitted in California.

*** Admitted in D.C. Not admitted in California.